# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-1159V**
UNPUBLISHED

|  |  |
|---|---|
| ARIANNA BORGRA, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: March 21, 2024 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Tracy Turner*, Pendley, Baudin, and Coffin, LLP, Plaquemine, LA, for Petitioner.

*Julia M. Collison*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION[1]

On July 26, 2023, Arianna Borgra filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa—10 through 34 (the "Vaccine Act"). Petitioner alleges that she suffered various injuries from a human papillomavirus ("HPV") vaccination she received on March 24, 2011, and her injuries were significantly aggravated by HPV vaccinations she received on June 2, 2011, and November 23, 2011. ECF No. 1 at 3.

Because the petition was untimely filed, and Petitioner has failed to establish a basis for equitable tolling, this case is **DISMISSED**.

## Relevant Factual Background

Petitioner alleges she received three HPV vaccinations on March 24, 2011 (age fifteen), June 2, 2011 (age fifteen), and November 23, 2011 (age sixteen). ECF No. 1 ¶ 2. Petitioner stated that her mother was present at the first HPV vaccination, but it is unclear if her mother was present at the other vaccinations. Exhibit 1 ¶ 3.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

Petitioner stated "shortly after" the first HPV vaccination she experienced pain, swelling, fever, headaches, irregular heartbeats, and passing out. ECF No. 1 ¶ 5. Following the second and third vaccinations, Petitioner's previous symptoms worsened, and she also developed seizure-like symptoms, gastrointestinal issues, temperature sensitivity, difficulty sleeping, brain fog, and difficulty concentrating. Id. ¶ 6. Petitioner was diagnosed with postural orthostatic tachycardia syndrome, fibromyalgia, seizures, pseudo seizures, mast cell activation syndrome, and headaches. Id. ¶ 7.

Facially, Petitioner's claim herein was filed over *eleven* years after her last HPV dose, which was administered in 2011, and over *eleven* years from the time she began manifesting symptoms or the symptoms were significantly aggravated. But Petitioner maintains her delay is excusable. Thus, in an affidavit dated October 11, 2023, Petitioner attests that during the vaccination appointments twelve years earlier, no Vaccine Information Statements (VIS) were provided, and no information was relayed about the Vaccine Program. Exhibit 27 ¶ 6. Petitioner turned eighteen in 2013 and stated that she became aware of the Vaccine Program "a short time before" she filed the petition on July 26, 2023. *Id.* ¶ 5. She also stated that she learned of the possibility of an adverse reaction from the HPV vaccine "less than two years" before filing the petition, presumably sometime in 2021. ECF No. 18 at 2. Petitioner did not submit an affidavit from her mother, who attended at least the first HPV vaccination appointment, about whether any counseling or information was provided about the HPV vaccine or the Vaccine Program.

<u>**Relevant Procedural History**</u>

Given that the timeliness of the claim was legitimately called into question merely by the face of the actual Petition, while the case was still in the initial "pre-assignment review,"[2] I ordered Petitioner to show cause why the claim had not been filed outside the Act's 36-month statute of limitations. Sec. 16(a)(2); ECF No. 11.

On November 27, 2023, Petitioner filed a response. ECF No. 14. Petitioner did not dispute the onset (or aggravation) of symptoms in 2011, or that her petition was filed in 2023 (and not sooner than 2014), but instead argued that the limitations period should be equitably tolled. Petitioner asserted that she had diligently pursued her rights once she became aware of her legal rights. Petitioner also made allegations not relevant to a Vaccine Act claim, about the perfidious conduct of the vaccine manufacturer in fraudulently concealing the HPV vaccine's harmful character from the public. ECF No. 11 at 22. Relatedly, Petitioner argued that the failure of a healthcare professional to provide her with a VIS at the time of vaccination can be attributed to the Department of Health

---

[2] Pre-Assignment Review, or PAR, is a process utilized by the Office of Special Masters to assess whether a claim's primary evidentiary documentation has been filed. *See* notice at http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters.

and Human Services' failure to systematically ensure that VIS are explained and provided to all vaccine recipients. *Id.* at 9.

On January 9, 2024, Respondent submitted a responsive brief of his own, arguing for dismissal due to untimeliness. ECF No. 16. Respondent maintained that Petitioner in fact had not diligently pursued her rights before filing a vaccine claim in 2023. Respondent also disputed the veracity of contentions about the manufacturer's conduct, and whether it could in any event constitute an extraordinary circumstance that would serve as a basis for tolling of the statute.

On March 11, 2024, Petitioner filed a reply to Respondent's arguments. ECF No. 18. For the first time, Petitioner raised the argument about the importance of her status as a minor when she received the HPV vaccinations and that she could not bring a vaccine claim until she turned eighteen in 2013.[3] *Id.* at 2-3.

## Legal Standards

The Vaccine Act's statute of limitations is thirty-six months. Sec. 16(a)(2). The statute begins to run from the manifestation of the first objectively cognizable symptom, whether or not that symptom is sufficient for diagnosis (or even recognized by a claimant as significant). *Id.*; *Carson v. Sec'y of Health & Hum. Servs.*, 727 F.3d 1365, 1369 (Fed. Cir. 2013).

The Federal Circuit has held that the doctrine of equitable tolling can apply to Vaccine Act's statute of limitations. *See Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1340-41 (Fed. Cir. 2011). However, in keeping with applicable U.S. Supreme Court precedent, equitable tolling of a limitations period is to be permitted "sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, (1990). The appropriateness of equitable tolling is ultimately to be determined on a case-by-case basis, without rigid application of any relevant overarching guidelines. *Holland v. Florida*, 560 U.S. 631, 649–50 (2010); *accord Arctic Slope Native Ass'n v. Sebelius*, 699 F.3d 1289, 1295 (Fed. Cir. 2012).

Petitioners must prove two elements to establish equitable tolling: (1) that petitioner diligently pursued her rights, and (2) an extraordinary circumstance prevented her from timely filing the claim. *K.G. v. Sec'y of Health & Hum. Servs.*, 951 F.3d 1374,

---

[3] Although the argument about Petitioner's minor status is newly raised in the reply, in many cases with virtually identical legal issues, Respondent has declined to address this argument even when it is raised in the petitioner's initial response to the order to show cause. *See Needham v. Sec'y of Health & Hum. Servs.*, No. 23-630V, 2023 WL 9287882 (Fed. Cl. Spec. Mstr. Dec. 20, 2023); *Roman v. Sec'y of Health & Hum. Servs.*, No. 23-705V, 2024 WL 470570, at *1 (Fed. Cl. Spec. Mstr. Jan. 5, 2024). Allowing Respondent the opportunity to address (and most likely oppose) this argument would not change the result of this decision.

1379 (Fed. Cir. 2020) (citing *Menominee Indian Tribe v. United States*, 577 U.S. 250, 255 (2016)).

When first articulating this limited exception to equitable tolling, the Federal Circuit primarily enumerated fraud and duress as a basis for equitable tolling—but not, for example, *lack of awareness* on a petitioner's part that she might have an actionable claim. *Cloer*, 654 F.3d at 1344–45 (noting that tolling of the Vaccine Act's statute of limitations period is not triggered "due to unawareness of a causal link between an injury and administration of a vaccine"). In *K.G.,* 951 F.3d at 1380–82 (Fed. Cir. 2020), the Circuit more explicitly endorsed the proposition that an individual's demonstrated mental incapacity could be a basis for equitable tolling in the Program. For a mentally incapacitated individual, the Circuit instructed that the details of the individual's relationship with her legal guardian would affect whether there was reasonable diligence or extraordinary circumstances. *K.G.,* 951 F.3d at 1382 (Fed. Cir. 2020). More recently, the Circuit concluded that a parent acting as a legal guardian did not have extraordinary circumstances preventing the filing of a petition where the parent: (1) routinely made medical decisions on behalf of the legally incapacitated individual during the relevant time period, (2) had no documented strained relationship with the individual, and (3) had no conflicts of interest dissuading the parent from filing a petition. *W.J. v. Sec'y of Health & Hum. Servs.*, 93 F.4th 1228, 1241 (Fed. Cir. 2024).

## <u>Analysis</u>

The untimeliness of this filing is acknowledged by Petitioner, so the only question to be resolved is whether equitable tolling should save the claim. But Petitioner has failed to establish both elements of equitable tolling – diligent pursuit and extraordinary circumstances.

### A)  Diligent pursuit

Petitioner argues that her diligent pursuit of her vaccine claim was impeded by her minor status when the vaccinations were administered. That argument would apply from 2011, the onset of symptoms, until 2013, when Petitioner turned eighteen. After Petitioner turned eighteen in 2013, she did not describe any diligent pursuit from then until she became aware of the potential adverse effects of the HPV vaccine in 2021.

These arguments are wholly unpersuasive. It is beyond question that claims asserted in the Vaccine Program are not subject to a "discovery rule," accruing only when a claimant *learns* he or she might possess a cause of action. Rather, the statute of limitations period is triggered by the onset of Petitioner's symptoms – whether or not onset was understood to be the start of the claimed injurious illness or condition. *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1340 (Fed. Cir. 2011) (en banc). And the failure

to be advised of the Vaccine Program or the Act does not support equitable tolling of the statute of limitations period for an otherwise-untimely filed petition. *Speights v. Sec'y of Health & Hum. Servs.*, No. 03-2619V, 2013 WL 5944084, at *13 (Fed. Cl. Spec. Mstr. Oct. 17, 2013). Thus, a petitioner cannot generally shield an untimely claim from dismissal by asserting, even in good faith, that she literally was unaware of her Vaccine Act "rights."

Petitioner attempts to leverage her minor status at the time of vaccination into an exception to the above. The Federal Circuit has conclusively stated that Vaccine Act does not contain a provision for minority tolling and that Congress did not intend to allow minority tolling. *W.J.*, 93 F.4th at 1241. The only savings clause in the Act is for revisions to the Vaccine Injury Table, which allow an otherwise untimely claim for newly added vaccines to be filed. Sec. 16(b). And there is no argument here that a Table claim specifically involving the HPV vaccine was added that would cover Petitioner's delayed filing.[4]

As noted above, Petitioner's personal diligence to file a vaccine claim in 2023 is only relevant after she turned eighteen in 2013. While Petitioner was a minor, since the Act permits claims to be brought by a minor's parent or legal guardian, it is *that* person's diligence that bears on this aspect of the tolling question. And parents are generally presumed to be adequate surrogates for their children. *United States v. Alvarez*, 710 F.3d 565, 568 n.10 (5th Cir. 2013); Court of Federal Claims Rule 17(c)(1)(A) (guardian permitted to sue on behalf of a minor); Vaccine Rule 2(c)(2)(C) (parents are presumed to be able file in a representative capacity on behalf of their children without supporting documentation).

At best, the Federal Circuit has noted that a guardian's effectiveness in acting on behalf of a legally incapacitated individual should be assessed on a case-by-case basis, and there thus could be circumstances where the adequacy of a guardian's performance of their duties bears on tolling. *K.G.,* 951 F.3d at 1382 (Fed. Cir. 2020). Petitioner stated that her mother at least attended the first HPV vaccination appointment, and her mother presumably would attend most of Petitioner's appointments. Petitioner's mother would also be the person to consent to medical treatment, including vaccinations, for her daughter, and the person to receive all medical information, including a VIS. But Petitioner has made no showing at all, or even allegation, that her mother (or some other legal guardian, for that matter) was deficient in handling Petitioner's legal and medical affairs.

---

[4] In fact, the HPV vaccine was added to the Table in 2007 – *four* years before onset is alleged herein to have occurred. 42 C.F.R. § 100.3 (Vaccine Injury Table); National Vaccine Injury Compensation Program: Addition of Meningococcal and Human Papillomavirus (HPV) Vaccines to the Vaccine Injury Table, 72 Fed. Reg. 19937 (Apr. 20, 2007). The Act's lookback provisions have no relevance at all to the timeliness of this claim.

On the contrary, after the onset of symptoms in 2011, Petitioner's mother continued to accompany her daughter to medical appointments and to seek additional care for her daughter.[5] Exhibit 3 at 176 (July 25, 2012 appointment); exhibit 5 at 12 (Dec. 14, 2012 appointment), 9 (Mar. 1, 2013 appointment). From the available records, Petitioner's mother appears effective at handling her daughter's medical care, which may be imputed to her mother's handling of other aspects of Petitioner's life. As for legal affairs, Petitioner has not made any allegations against her mother's effectiveness or submitted any direct evidence that could be used to assess her mother's effectiveness. Thus, without any evidence, Petitioner cannot support a tolling of the statute of limitations based on her mother being ineffective at handling her legal affairs as a minor.[6]

Lastly, presuming that Petitioner's mother was effective at handling Petitioner's legal affairs, Petitioner has not submitted any evidence that her mother diligently pursued Petitioner's vaccine claim during the statute of limitations period. Petitioner did not submit an affidavit from her mother to state whether her mother understood the risks of the HPV vaccine, whether her mother received the VIS, whether her mother diligently pursued Petitioner's vaccine claim, whether her mother chose not to file a vaccine claim, or whether her mother believed that extraordinary circumstances prevented the filing of a vaccine claim. Thus, there is no evidence that Petitioner's mother diligently pursued a vaccine claim on behalf of Petitioner.

### B) Extraordinary Circumstances

Petitioner's arguments about the purported fraudulent conduct of the vaccine's manufacturer, in hiding proof of the vaccine's dangers, deserve even less consideration. ECF No. 14 at 21. As a threshold matter, these contentions are speculative and not evidentiarily-supported. And regardless of their actual truth, the fact remains that the Government *has approved* the HPV vaccine for administration to minors, rendering it "covered" under the Act. The only issue to be resolved in a Program case is whether (assuming, as here, the claim is not a Table claim) the claim meets the standards for causation – and those standards have nothing to do with a manufacturer's alleged misconduct in preparation or promotion of the underlying vaccine.

---

[5] Petitioner had frequent visits with her pediatrician after the onset of symptoms. However, the medical records from Petitioner's pediatrician (exhibit 3) are not helpful in determining whether Petitioner's mother accompanied her to appointments. The records are often handwritten and overall contain a minimal amount of information about each appointment.

[6] Even if Petitioner's mother was presumed to be ineffective at handling Petitioner's legal affairs, Petitioner could at most hope to toll the statute of limitations on this basis until she turned eighteen in 2013, pushing the statute of limitations deadline to 2016. Petitioner would still need additional equitable tolling on the basis of her own diligent pursuit to overcome the statute of limitation issue.

These allegations also are not a basis for tolling under the circumstances. Petitioner simply has not shown that contentions of corporate misconduct not specific to, or directed at, her personally could rise to the level of the kind of "fraud" that might excuse failing to file a Program claim in a timely manner. Nor has she persuasively established that the vaccine administrator's "failure to warn," or provide a VIS in 2011, is an extraordinary circumstance. Even assuming the factual accuracy of that allegation,[7] it remains the case (as the Circuit recognized in *Cloer*) that vaccine claims accrue upon onset – and that the failure to be advised of the Vaccine Program does not support equitable tolling. *Cloer,* 654 F.3d at 1340; *see also Speights,* 2013 WL 5944084, at *13. And arguments about governmental agency knowledge of a failure to warn reflect overheated, almost-conspiratorial allegations that do not come close to excusing the claim's untimely nature.

Finally, Petitioner also asserts that the safety of the HPV vaccine "should not be resolved on these papers alone." ECF No. 18 at 7. But this argument willfully ignores the extent to which I have personally ruled in numerous prior cases that medical science does not preponderantly support the contention that the HPV vaccine can cause various autonomic issues. S*ee,* e.g., *Hughes v. Sec'y of Health & Hum. Servs.*, No. 16-930V, 2021 WL 839092, at *31 (Fed. Cl. Spec. Mstr. Jan. 4, 2021), *mot. for review denied*, 154 Fed. Cl. 640 (2021); *E.S. v. Sec'y of Health & Hum. Servs.*, No. 17-480V, 2020 WL 9076620, at *40, 43 (Fed. Cl. Spec. Mstr. Nov. 13, 2020), *mot. for review denied*, 154 Fed. Cl. 149 (2021); *McKown v. Sec'y of Health & Hum. Servs.*, No. 15-1451V, 2019 WL 4072113, at *44–45 (Fed. Cl. Spec. Mstr. July 15, 2019). The Act does not require that the same theory rejected so many times before must be relitigated by the Program ad infinitum (especially in the absence of new compelling evidence). Rather, special masters are expressly empowered to rely on their expertise, earned in adjudicating Program cases, in subsequent similar matters. To suggest that they should ignore what they have learned in that process reveals a complete miscomprehension of the Program's underlying goals and purposes.

## Conclusion

Thus, Petitioner has failed to establish equitable tolling. **This case is dismissed for being untimely filed. The Clerk of Court shall enter judgment accordingly.**[8]

---

[7] As noted above, the medical records of the vaccine administrator, Petitioner's pediatrician (exhibit 3), are often handwritten and overall contain a minimal amount of information about each appointment. Unlike facilities with electronic medical records, it is unclear if the pediatrician's office would ever document vaccine counseling or providing VIS to a patient. Petitioner's only evidence that no VIS or information about the Vaccine Program was provided was her affidavit dated August 7, 2023, in which she attested about events that occurred around twelve years ago when she was a teenager. Exhibit 1 ¶ 3.

[8] If Petitioner wishes to bring a civil action, she must file a notice of election rejecting the judgment pursuant to § 21(a) "not later than 90 days after the date of the court's final judgment."

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master